## In re BLUM BROS. CO.

### DAVIS v. BLUM.

#### No. 6216.

Circuit Court of Appeals, Sixth Circuit.
Feb. 17, 1933.

Gordon D. Kinder, of Martins Ferry, Ohio, for appellant.

B. G. Watson, of Columbus, Ohio, and Max Isaac, of New York City (Robert J. Blum, of New York City, and Watson, Davis & Joseph, of Columbus, Ohio, on the brief, for appellee.

Before HICKS, HICKENLOOPER, and SIMONS, Circuit Judges.

HICKS, Circuit Judge.

Appeal by H. R. Davis, trustee, in bankruptcy, of the Blum Bros. Company, a corporation, from an order of the District Judge confirming the allowance of a claim of appellee, Hannah Blum, in the sum of $60,000.

In the year 1890, Henry and Isaac Blum became the owners of certain improved real estate in Bellaire, Ohio, and conducted business thereon as copartners until 1916, when they transferred the business to the corporation, the Blum Bros. Company. From 1916 until September 11, 1923, the corporation occupied a part of the premises at an annual rental of $5,000, and the remainder rented for approximately $3,800 a year. On September 11, 1923, they and their wives, Ida and Hannah, leased the entire premises to the corporation for forty years from April 1, 1923, and incorporated into the lease several independent agreements, among others, to wit, (1) that the lessee would construct a building on the premises before the 1st day of January, 1925, which should cost not less than $150,000; (2) that it should pay the lessors a yearly rental of $5,000; (3) that it should pay certain taxes, assessments, excises, imposts, and other charges against the premises and save the lessors harmless therefrom; (4) that it should carry insurance upon the premises for the benefit of the lessors; (5) that it should conform to and observe all ordinances, rules, and regulations of public authorities relating to the premises; (6) that it should keep the buildings and improvements in good order, condition, and repair, and save the lessors harmless from all damage occasioned by any neglect of the lessee.

To defray the cost of the construction of the building, it was necessary to secure a loan of $125,000. The scheme was to issue and sell bonds of the corporation to secure such funds. These bonds were also to be secured by a mortgage upon the buildings and improvements to be constructed by use of the money so procured, for it was obvious that the mortgage of the lease itself would not be sufficient security for repayment of the amount needed.

To make effective the lease obligations, the Blum Bros. Company on September 12, 1923, executed a mortgage upon the lease to the First National Bank of Bellaire, trustee, to secure the payment of $125,000 of its building bonds, and the Blums and their wives joined in this instrument and mortgaged their entire interest in the property.

Some time after the execution of the lease and mortgage, Isaac Blum died, devising his interest in the premises to his wife, Hannah, the appellee.

On January 1, 1928, the corporation defaulted in making payment of principal and interest then due upon the bonds and was soon thereafter adjudicated a bankrupt. On August 3, 1928, the First National Bank, as trustee in foreclosure proceedings, sold the entire interest in the property for $128,000, which was just sufficient to pay the bonded indebtedness.

On August 21, 1929, Hannah Blum, appellee, filed her proof of debt against the bankrupt estate. She alleged that the bankrupt was indebted to her in the sum of $100,000 and "that the consideration of said debt is for loss of half interest in real property mortgaged to secure debt of bankrupt, said property having been sold on foreclosure of said mortgage and proceeds used to pay debt of bankrupt." She afterwards voluntarily reduced her claim to $60,000.

We do not think that this claim was provable in bankruptcy. This is not a situation wherein the law implies a promise upon the part of a principal to reimburse a surety or guarantor. It is true that the parties contemplated that the corporation would ultimately pay the bonded indebtedness and thus relieve the property of the mortgage lien; but the money originally secured by the giving of the mortgage was not primarily for the use and benefit of the corporation, but of the Blums and for the improvement of their property. In effect, therefore, and in equity, the Blums must be regarded as the principal debtors and the corporation as merely being bound by its contract to liquidate that debt—a surety or guarantor. Perhaps the owners of the fee might have or have had a claim against the corporation for breach of its contract, but this is an issue not here presented.

We are confronted with the specific agree-

ment between the Blums and the corporation, embodied in the lease, that the Blums would mortgage their interest in the property and the culmination of this agreement in the mortgage itself, "in consideration of the benefits accruing to them under the lease"; that is, that the buildings and improvements to be erected on the premises would become the absolute property of the lessors on the termination of the lease and in consideration of the other agreements to be performed by the lessee. Both lease and mortgage were legally effective, and the Blums were competent to execute them. That the result proved disappointing to the Blums and that they lost their property did not destroy the effect of the mortgage as a conveyance of their property inter vivos, for their own uses, and it was as a direct result of this conveyance, and not as a result of the breach of the contract by the corporation, that they lost their interest.

Upon the grounds indicated, the order of the District Court is reversed and it is unnecessary to determine the further question, whether the claim should have been prosecuted in the name of the personal representative of Isaac Blum rather than in the name of appellee.